# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

LUTHER MCFARLAND                          CIVIL ACTION

VERSUS                                     NO. 11-0439

BURL CAIN, WARDEN                          SECTION: "C"(5)

### REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2(A), presently before the Court is the 28 U.S.C. §2254 application for federal habeas corpus relief of petitioner, Luther McFarland. Upon review of the entire record, the Court has determined that a federal evidentiary hearing is unnecessary and, as such, petitioner's motion for an evidentiary hearing (rec. doc. 17) is **HEREBY DENIED**. <u>See</u> 28 U.S.C. §2254(e)(2).[1] For the following

---

[1] Under 28 U.S.C. §2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination. Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. §2254(e)(2)(A)(i), or the claim relies on a factual predicate that could not have been previously discovered by the exercise of due diligence, 28 U.S.C. §2254(e)(2)(A)(ii), and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28

reasons, it is recommended that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE.**

**PROCEDURAL HISTORY**

On September 23, 2004, petitioner, Luther McFarland, presently incarcerated in the Louisiana State Penitentiary, Angola, Louisiana, was charged by grand jury indictment with second degree murder in violation of LSA-R.S. 14:30.1.[2] He pled not guilty at the arraignment that was held the following day.[3] Brian Fullilove, Morris McFarland, Yarnall McFarland, and Derrick Williams were also indicted along with petitioner.[4] On January 20, 2005, all of the cases of the co-defendants were severed.[5]

On June 8, 2005, petitioner proceeded to trial in the Twenty-Fourth Judicial District Court for the Parish of Jefferson.[6] On the following day, a twelve-person jury found petitioner guilty as charged.[7] Petitioner filed a motion for new trial, which the trial

_____

U.S.C. §2254(e)(2)(B).

[2] A copy of the indictment is contained in the State rec., vol. 1 of 9.

[3] Id.

[4] Id.

[5] Id.

[6] State rec., vol. 2 of 9.

[7] Id.

judge denied on June 28, 2005 prior to sentencing petitioner to life imprisonment at hard labor without benefit of probation, parole, or suspension of sentence.[8]

Petitioner appealed the jury's finding of guilt, arguing that the evidence was insufficient to support his conviction and that he had been arrested without probable cause.[9] On May 29, 2007, the Louisiana Fifth Circuit Court of Appeal rejected the above claims, affirming petitioner's conviction and sentence, but remanded the matter for the trial judge to properly advise petitioner of the prescriptive period for seeking post-conviction relief and to correct the minute entry from trial to show the actual number and names of the jurors. State v. McFarland, 960 So.2d 1132 (La. App. 5th Cir. 2007). On January 7, 2008, the Louisiana Supreme Court denied petitioner's writ application, State v. McFarland, 973 So.2d 732 (La. 2008), and his conviction became final ninety days later when the time for seeking a writ of certiorari from the U.S. Supreme Court expired and no application therefor was made. Roberts v. Cockrell, 319 F.3d 690, 694 (5th Cir. 2003).

On September 15, 2008, petitioner commenced pro se post-conviction proceedings in the state trial court, claiming: 1) his

---

[8] Id.

[9] Id.

indictment failed to provide "cause" for the accusation; 2) trial counsel was ineffective for failing to move to quash the indictment along with a vague claim that counsel failed to investigate discovery; and, 3) appellate counsel was ineffective for failing to challenge the sufficiency of the indictment on appeal.[10]  On or about April 21, 2009, petitioner filed a supplement to his post-conviction relief application, raising one additional claim:  1) the trial court erred in allowing the state to institute prosecution before determining if petitioner had the mental capacity to proceed.[11]  On July 17, 2009, the state district court denied petitioner post-conviction relief.[12]  Thereafter, petitioner sought review from the Louisiana Fifth Circuit Court of Appeal, raising the following claims: 1) his indictment failed to show "cause" for the accusation; 2) he was denied the effective assistance of trial counsel; 3) he was denied the effective assistance of appellate counsel; and, 4) the trial court erred in allowing the state to prosecute him before determining whether he

---

[10] A copy of petitioner's post-conviction application is contained in the State rec., vol. 4 of 9.

[11]A copy of petitioner's supplement to his post-conviction application is contained in the State rec., vol. 4 of 9.

[12]A copy of the state district court's July 17, 2009 Order denying petitioner post-conviction relief is contained in the State rec., vol. 4 of 9.

had the mental capacity to proceed.[13]  On November 19, 2009, the state appellate court issued its opinion, finding "no error in the trial court's denial of relator's application for post-conviction relief" and, therefore, denying petitioner's writ application. State ex rel. McFarland v. Burl Cain, No. 09-KH-743 (La. App. 5th Cir. Nov. 19, 2009)(unpublished opinion).[14]  On December 15, 2009, petitioner filed a "writ of certiorari and review" with the Louisiana Supreme Court, raising the following claims: 1) his indictment failed to show "cause" for the accusation; 2) he received ineffective assistance of trial counsel because counsel failed to object to the indictment or to move for a continuance to better prepare himself for trial; and, 3) the trial court erred in allowing the prosecution to proceed before determining petitioner's mental competency.[15]  On January 7, 2011, the Louisiana Supreme Court denied petitioner's writ application.  State ex rel. McFarland v. State, 53 So.3d 467 (La. 2011).

On or about February 2, 2011, petitioner filed the instant application for federal habeas corpus relief, raising the following

---

[13]A copy of petitioner's writ application to the Louisiana Fifth Circuit is contained in the State rec., vol. 9 of 9.

[14]A copy of the Louisiana Fifth Circuit's November 19, 2009 unpublished opinion is contained in the State rec., vol. 9 of 9.

[15]A copy of petitioner's writ of certiorari is contained in the State rec., vol. 9 of 9.

claims: 1) his indictment was invalid "due to the lack of substance or elements"; 2) he was denied the effective assistance of trial counsel; 3) he was the denied effective assistance of appellate counsel; and, 4) the trial court erred by allowing the state to prosecute him before determining whether he had the mental capacity to proceed. (Rec. docs. 1, pp. 4-8; 1-1, p. 6). In its initial response (rec. doc. 8), the State conceded that petitioner's habeas application was timely, but contended that petitioner had failed to exhaust his available state court remedies as to his third claim for relief alleged herein.

**EXHAUSTION/PROCEDURAL DEFAULT**

It is well-established that a petitioner must exhaust his available state court remedies before proceeding to federal court for habeas relief. 28 U.S.C. §2254(b)(1)-(3); <u>Rose v. Lundy</u>, 455 U.S. 509 (1982). As the Supreme Court explained in <u>Picard v. Connor</u>, 404 U.S. 270, 275 (1971)(citations and quotations omitted):

> [t]he exhaustion-of-state remedies doctrine ... reflects a policy of federal-state comity, ... an accommodation of our federal system designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights.... We have consistently adhered to this federal policy, for it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.

The State initially asserted that petitioner had failed to exhaust his state court remedies by virtue of the fact that he neglected to raise his third claim, that he received ineffective assistance of appellate counsel, before the Louisiana Supreme Court in either of this writ applications to that tribunal. Petitioner, in his reply (rec. doc. 10) to the State's response, contends that when he filed his writ application with the Louisiana Supreme Court, he attached a copy of the post-conviction relief application that he had filed with the state district court which included his claim of ineffective assistance of appellate counsel. Therefore, petitioner argues, the Louisiana Supreme Court was aware of every claim he was raising and, as such, he adequately exhausted his state court remedies.

The above argument, that a higher court is made aware of all of a petitioner's claims if said claims are raised in a lower court, has been specifically rejected by the United States Supreme Court. In Baldwin v. Reese, 541 U.S. 27, 32 (2004), the Court determined that a state petitioner generally does not fairly present a claim to a state court, and thereby satisfy his exhaustion requirement, if the claim is not set forth in the brief presented to that particular court. State appellate courts, "particularly those with discretionary review powers", are under no obligation to read lower court opinions or briefs in order to

ascertain which claims a state petitioner is bringing before the court. Id. at 31-32. Thus, petitioner, with regard to his third claim, ineffective assistance of appellate counsel, has failed to exhaust his state court remedies.

Related to the exhaustion requirement is the doctrine of procedural default, another separate but distinct limit on the availability and scope of federal habeas review. See Nobles v. Johnson, 127 F.3d 409, 420-23 (5th Cir. 1997), cert. denied, 523 U.S. 1139 (1998).[16] "A procedural default ... occurs when a prisoner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims would now find the claims procedurally barred.'" Bourg v. Prince, 2010 WL 1552723 at *3 (E.D. La. March 19, 2010)(Chasez, M.J.), adopted, 2010 WL 1552728 (E.D. La. April 14, 2010)(Africk, J.) (quoting Nobles, 127 F.3d at 420 (additional quotation and citation omitted)).

With limited exceptions not applicable here, Article 930.8 of the Louisiana Code of Criminal Procedure provides that no application for post-conviction shall be considered by the state

---

[16] A district court may raise the issue of procedural default sua sponte provided that the petitioner is given notice. Magouirk v. Phillips, 144 F.3d 348, 358 (5th Cir. 1998). The Court's order of May 23, 2011 (rec. doc. 12) provided petitioner with that required notice. Id. at 359.

courts if it is filed more than two years after the judgment of conviction and sentence of a defendant have become final. The Fifth Circuit has determined that Article 930.8 constitutes an independent and adequate state rule that is regularly applied by the state courts. Glover v. Cain, 128 F.3d 900, 902 (5th Cir. 1997), cert. denied, 523 U.S. 1125 (1998).

As noted in the procedural history discussed above, petitioner has not urged before the Louisiana Supreme Court the claim that he received ineffective assistance of appellate counsel. It would now be too late for him to do so in light of Article 930.8. Accordingly, habeas review of petitioner's claim that he received ineffective assistance of appellate counsel is barred unless he can establish cause for his procedural default and actual prejudice as a result of the alleged constitutional violation, or if he can demonstrate that the failure to entertain the claim will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750 (1991).

In his "Responce [sic] to Procedural Default" (rec. doc. 13), petitioner attempts to establish cause by arguing that the trial court failed to advise him of the prescriptive period under Article 930.8 and, as such, said prescriptive period "must be held in abeyance". Therefore, he should not be procedurally barred, pursuant to the two-year prescriptive period imposed under Article

930.8, from raising his claim of ineffective assistance of appellate counsel. Petitioner, however, provides no jurisprudence to support his claim and this Court's research has uncovered no support for such a proposition.[17] Accordingly, the Court finds that petitioner has failed to show the requisite cause to avoid a finding that his ineffective assistance of appellate counsel claim is procedurally barred. Without a showing of cause, the Court need not consider the element of prejudice. See <u>Murray v. Carrier</u>, 477 U.S. 478, 494-95 (1986). Likewise, because petitioner makes no showing of actual innocence, he has not demonstrated that a fundamental miscarriage of justice will occur if his ineffective assistance of appellate counsel claim is not considered. <u>Glover</u>, 128 F.3d at 904.

Having disposed of petitioner's claim that he received ineffective assistance of appellate counsel, the Court now turns to the merits of petitioner's other claims that he properly exhausted

---

[17] Additionally, as noted earlier, on May 29, 2007, the Louisiana Fifth Circuit Court of Appeal, while affirming petitioner's conviction and sentence, specifically remanded the matter to the trial court with the directive that the trial judge provide defendant with written notification of the prescriptive period under Article 930.8. <u>See</u> <u>McFarland</u>, 960 So.2d at 1141. Petitioner was obviously aware of the prescriptive period no later than June 20, 2007 as he attached a copy of the Louisiana Fifth Circuit's opinion to the writ application that he subsequently filed in the Louisiana Supreme Court in the context of his direct criminal appeal. State rec., vol. 9 of 9.

in the state court system following its recitation of the facts and standard of review.[18]

**FACTS**[19]

On May 10, 2004, Arthur Buras was living in one side of a double located at 2819 Tugie Drive in Metairie. At approximately 12:30 a.m., he heard loud noises coming from the other side of the double, 2817 Tugie Drive, where the victim, 23-year-old Coulton Lyell, Jr., lived. Mr. Buras looked out of his bedroom window and saw three black males trying to break through the victim's front door. He heard muffled voices, and then heard a gunshot. When he looked outside of the front window, he saw the three men running down Tugie Drive toward Park Manor. When they reached the corner, they started walking toward Lafreniere Drive. Mr. Buras never got a good look at any of their faces.

Sergeant Donald Meunier, Lieutenant Dennis Thronton and other officers of the Jefferson Parish Sheriff's Office responded and found the victim on the floor in a bedroom with a gunshot wound to the neck. The State's forensic pathologist, Dr. Susan Garcia, testified the victim sustained a gunshot wound to the left side of his neck, which resulted in injury to the left lung. The victim also had patterned abrasions on his left forehead. Dr. Garcia explained the object that struck the victim's forehead imprinted the skin with the particular pattern. Based on the gunpowder marks, or stippling, near the wound, Dr. Garcia characterized the wound as an intermediate range gunshot wound. She explained that it

---

[18] In its original response (rec. doc. 8), the State failed to address the merits of petitioner's exhausted claims. However, pursuant to this Court's Order (rec. doc. 12), the State has submitted a Supplemental Response (rec. doc. 14) addressing the merits of said claims.

[19] The facts are taken from the Louisiana Fifth Circuit's opinion on direct appeal, McFarland, 960 So.2d at 1134-36 (footnotes omitted).

was further away than close range, which is a contact wound, but closer than distant range, which is an undetermined distance away. A projectile was recovered from the victim's body.  The victim's toxicology test revealed the presence of marijuana, cocaine, amphetamine, methadone, benzodiazepine, and opiate.

The police found the victim's wallet, containing over $200 in cash on the bedroom floor.   Police found a dresser drawer opened in the bedroom.   A .40 caliber casing was recovered from the scene. The police found the front door opened, with shoe prints on it.   The deadbolt and door frame were damaged.   The back door, which was a partial-glass paned door, contained a broken pane.   The police did not find any cocaine in the house.


After a lengthy investigation, an arrest warrant for defendant   was issued on August 6, 2004, and the defendant was arrested on August 9, 2004.   After he was arrested and waived his rights, the defendant made a tape-recorded statement to Sergeant Meunier, which was admitted in evidence and was played for the jury at trial.   Initially, the defendant denied that he was on Tugie Drive in the early morning hours of May 10, 2004. Thereafter, the defendant admitted that the gun discharged when he struck the victim after breaking into the house to steal the victim's cocaine.   The defendant said he had never met the victim, but had heard of him. The defendant explained that, on the day before, Yarnell McFarland told him that she had seen a large amount of cocaine in the victim's house.   The defendant, Morris McFarland and others had discussed earlier in the day that they would break in and take the cocaine while no one was home at the victim's house.   Later that night, Morris McFarland and Wooder picked up the defendant at his job at Popeye's and then brought him home.   They left and returned with Derrick.   The defendant hesitated because they were doing drugs, but the defendant said he was "inspired to go" "by [their] situation going with money."   The defendant retrieved his gun, a black Glock .40 caliber, and left with Morris and the others.


When Morris neared the victim's house, Luther and the others told Morris to stop around the corner because they did not want him to go with them.   Luther and the others

unsuccessfully tried to break in through the back door, but entered the front door after kicking it in. The defendant cocked the gun, since he "didn't know who was in there." The defendant called out, but no one ever responded, so he believed no one was home. The trio entered the victim's bedroom and found him on the bed. The defendant struck the victim with the gun and it "went off." The defendant said he did not mean to shoot the victim. They were asking him where the drugs were, and after the victim was shot, he tried to tell them. Derrick looked everywhere, but they left empty-handed. Afterwards, they met up with Morris at the corner.

At trial, Louise Walzer, a firearms expert, was called as a defense witness. Ms. Walzer testified that she examined a fired cartridge case and an unknown caliber projectile. She stated that the fired case was a Remington Peters .40 S&W caliber. She opined that the projectile was consistent with .40 caliber S&W ammunition. She testified that, the chances were very rare, unless the gun had an aftermarket barrel, that the projectile was fired from a Glock .40 caliber. The projectile had a "G" on the bullet at the base, which was consistent with Dr. Garcia's mark.

Shannon Herron testified that the defendant was employed at the Taco Bell in Kenner, and said that the defendant was a good employee. She stated she was not aware the defendant had a prior possession of cocaine conviction.

**STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. §2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the

merits, pure questions of law and mixed questions of law and fact are reviewed under §2254(d)(1) and questions of fact are reviewed under §2254(d)(2).  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000), <u>cert</u>. <u>denied</u>, 532 U.S. 1039 (2001).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. §2254(d)(1).   The United States Supreme Court has noted:

> ...  §2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning.  A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.  The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.  The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in <u>Williams[ v. Taylor</u>, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

> <u>Bell v. Cone</u>, 535 U.S. 685, 694 (2002)(citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state

court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2); see also Hill, 210 F.3d at 485; 28 U.S.C. §2254(e)(1).

## MERITS

### Invalid Indictment

Petitioner argues that his indictment was unconstitutional due to its "lack of substance or elements". (Rec. doc. 1-1, p. 9). According to petitioner, he was not properly put on notice of the charges against him because all of the applicable sections of LSA-R.S. 14:30.1, the second degree murder statute, were not included in his indictment.[20]

LSA-R.S. 14:30.1 provides, in pertinent part:

---

[20] Petitioner, based primarily on the above claim, filed a motion (rec. doc. 11) requesting that a transcript of the grand jury proceedings be produced and that this court conduct an in camera inspection of same. The law is clear, however, that a defendant's request for a grand jury transcript is properly denied absent a showing of a "particularized need" for said transcript. See Robinson v. Cain, 2011 WL 890973 at *8 (E.D. La. Feb. 7, 2011)(Chasez, M.J.), adopted, 2011 WL 901193 (E.D. La. March 14, 2011)(Zainey, J.)(citing Pittsburgh Plate Glass Co., v. United States, 360 U.S. 395, 399-01 (1959)(because defendant failed to meet burden of showing "particularized need", trial court did not err in refusing to disclose grand jury testimony)). This Court finds that petitioner has not shown the requisite "particularized need" and, for this reason, his motion (rec. doc. 11) is **HEREBY DENIED**.

A. Second degree murder is the killing of a human being:

 (1) When the offender has a specific intent to kill or to inflict great bodily harm; or

 (2) When the offender is engaged in the perpetration or attempted perpetration of ... aggravated burglary, ... even though he has no intent to kill or to inflict great bodily harm.

Petitioner complains that his indictment indicated that he was going to trial on the charge of second degree murder.  Because the indictment made no mention of the specific actions which comprise second degree murder, he contends that he was not placed on proper notice that he would have to defend against such allegations.

In connection with petitioner's state post-conviction relief proceedings, the Louisiana Fifth Circuit Court of Appeal specifically rejected petitioner's argument that his indictment was inadequate and did not properly place him on notice for purposes of defending himself.  Specifically, the Louisiana Fifth Circuit reasoned:

> [t]he Louisiana Constitution of 1974 provides that an accused shall be informed of the nature and cause of the accusation against him.  La. Const. 1974, art. I, §13.  <u>State v. Noil</u>, 01-521, p. 19 (La. App. 5 Cir. 12/26/01), 807 So.2d 295, 309.

> LSA-C.Cr.P. art. 464 states:

>  The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged.  It shall state for each count the official or customary citation of the statute

16

which relator is alleged to have violated.
Error in the citation or its omission shall
not be ground for dismissal of the indictment
or for reversal of a conviction if the error
or omission did not mislead the defendant to
his prejudice.

LSA-C.Cr.P. art. 465 authorizes the use of specific
short form indictments in charging certain offenses,
including murder cases. In particular, LSA-C.Cr.P. art.
465(A)(32) authorizes the following short form indictment
for second degree murder, to-wit: "A.B. committed second
degree murder of C.D." The Louisiana Supreme Court has
consistently upheld the constitutionality of short form
indictments. <u>State v. Blank</u>, 04-204, p. 34 (La.
4/11/07), 955 So.2d 90, 140, <u>cert.</u> <u>denied</u>, 128 S.Ct. 494,
169 L.Ed.2d 346, (2007).

In the present case, the grand jury indictment
charging relator reads in pertinent part:

That one ... LUTHER D. MCFARLAND ... late of
the **PARISH OF JEFFERSON**, on or about the 10th
day of May in the year of our Lord, Two
Thousand and Four with force of arms, in the
Parish aforesaid, within the jurisdiction of
the Twenty-Fourth Judicial District Court of
Louisiana, in and for the Parish aforesaid,
violated R.S. 14:30.1 in that [he] did commit
second degree murder of Coulton Lyell, ...
(Emphasis in original.)

Clearly, the Grand Jury indictment gave relator fair
notice that he was being charged with second degree
murder, in violation of LSA-R.S. 14:30.1, for the death
of Coulton Lyell. Thus, relator's assignment of error
related to defective indictment is without merit.[21]

_____

[21] The Louisiana Supreme Court affirmed the state appellate
court's finding in this regard, issuing a one-word opinion,
"Denied". <u>State ex rel. McFarland</u>, 53 So. 3d 467 (La. 2011).

The United States Court of Appeals for the Fifth Circuit has declined to review claims of insufficient indictment forms because "[t]he sufficiency of a state indictment is not a matter for federal habeas corpus relief unless it can be shown that the indictment is so defective that the convicting court had no jurisdiction ... **[and] this can be determined only by looking to the law of the state where the indictment was issued.**" Alexander v. McCotter, 775 F.2d 595, 598 (5th Cir. 1985)(citation and quotations omitted)(emphasis added); Murphy v. Beto, 416 F.2d 98, 100 (5th Cir. 1969).  Resolution of such an issue on federal habeas review is precluded "[w]hen it appears ... that the sufficiency of the indictment was squarely presented to the highest court of the state on appeal, and that court held that the trial court had jurisdiction over the case...."  Alexander, 775 F.2d at 598 (quotation and citations omitted); Murphy, 416 F.2d at 100 ("[j]urisdiction to try an offense includes jurisdiction to determine whether the offense is properly charged.")

As noted above, petitioner's claim challenging the sufficiency of the indictment that was lodged against him was presented to the

---

[22] A copy of the Louisiana Fifth Circuit's November 19, 2009 unpublished opinion is contained in the State rec., vol. 9 of 9.

18

Louisiana Supreme Court in his post-conviction writ application. By denying the application, the Louisiana Supreme Court necessarily acquiesced in the state appellate court's dismissal of that claim on the basis that the indictment was sufficient under Louisiana law. See Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991); Alexander, 775 F.2d at 599 ("by refusing to grant the appellant relief ... the Texas Court of Criminal Appeals has necessarily, though not expressly, held that the Texas courts have jurisdiction and that the indictment is sufficient for that purpose.") The Louisiana Supreme Court has therefore had the opportunity to address petitioner's challenge to his indictment and has by inference determined that the indictment was proper. For this reason, federal review of this claim is foreclosed here.[23]

**Ineffective Assistance of Counsel**

The seminal Supreme Court decision regarding ineffective assistance of counsel is Strickland v. Washington, 466 U.S. 668, 697 (1984), wherein the Court held that in order to prove that

_____

[23] Even if a due process analysis was required, petitioner would not prevail. The same short form indictment utilized in petitioner's case has been found to provide the necessary due process protections required by federal law. See Brown v. Cain, 2001 WL 96410 at *3 (E.D. La. Feb. 2, 2001)(Schwartz, J.) (addressing Louisiana short form indictment and second degree murder); Liner v. Phelps, 731 F.2d 1201, 1203-04 (5th Cir. 1984)(addressing Louisiana short form indictment and first degree murder).

19

counsel was ineffective, a petitioner must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. The burden of doing so is a heavy one and if a court finds that the petitioner has made an insufficient showing as to either one of the two prongs of inquiry, it may dispose of the claim without addressing the other prong. <u>Id</u>.

Under the deficient performance prong of the <u>Strickland</u> test, "it is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993)(citing <u>Strickland</u>, 466 U.S. at 690). To prove prejudice under the <u>Strickland</u> standard, a petitioner "... must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. Moreover, "[i]f the facts adduced at trial point so overwhelming to the defendant's guilt that even the most competent attorney would be unlikely to have obtained an acquittal, then the defendant's ineffective assistance claim must fail." <u>Green v. Lynaugh</u>, 868 F.2d 176, 177 (5th Cir.), <u>cert</u>. <u>denied</u>, 493 U.S. 831 (1989).

Petitioner claims that trial counsel was ineffective for failing to object to the defective indictment. However, as discussed above, the indictment was not defective. As such, any

objection to the indictment would have been meritless and counsel cannot be found ineffective for failing to make a meritless objection. Clark v. Collins, 19 F.3d 959, 966 (5th Cir. 1994), cert. denied, 513 U.S. 966 (1994)("[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite."); see also United States v. Kimler, 167 F.3d 889, 893 (5th Cir. 1999)("[a]n attorney's failure to raise a meritless argument ... cannot form the basis of a successful ineffective assistance of counsel claim because the result of the proceeding would not have been different had the attorney raised the issue.").

Petitioner also claims that trial counsel was ineffective due to his failure to file a bill of particulars and failure to investigate discovery material. (Rec. doc. 1-1, p. 11). Petitioner, however, fails to explain what a more thorough investigation would have uncovered or how he was prejudiced by counsel's alleged inaction.[24] Hill v. Lockhart, 474 U.S. 52, 59 (1985); Larsen v. Maggio, 736 F.2d 215, 218 (5th Cir.), cert. denied, 469 U.S. 1089 (1984). Further, this Court, based upon the substantial evidence introduced against petitioner in support of his conviction on the charge of second degree murder, can find no

---

[24] In affirming the denial of post-conviction relief by the trial court, the Louisiana Fifth Circuit similarly found plaintiff's allegations in this regard too vague and lacking in specificity. State ex rel. McFarland, No. 09-KH-743 at pp. 3-4.

basis to conclude that petitioner was prejudiced. <u>Green</u>, 868 F.2d

at 177. As the Louisiana Fifth Circuit observed:

> [i]n his statement, the defendant claims he cocked the
> gun, which he said was a Glock, after entering the house
> and that the gun discharged when he struck the victim.
> He said that he had forgotten the gun was loaded and that
> he had cocked it. However, there was evidence from which
> the jury could have inferred that the gun did not fire as
> the defendant claimed. Sergeant Meunier testified that
> a Glock has an internal cocking mechanism, so that when
> the trigger is pulled, the gun fires. Sergeant Meunier
> also testified that he could not fathom how the victim
> could have sustained the gunshot wound to the throat if
> the defendant had struck the victim in the head, as he
> claimed. Additionally, Dr. Garcia testified that it
> would be unlikely for the gunshot wound to occur
> simultaneously with the patterned abrasion on the
> victim's forehead.

> Even if the victim died in the fashion the defendant
> claims, we find the evidence was sufficient to prove the
> defendant had the requisite intent. In <u>State v. Price</u>,
> (La. App. 1st Cir. 1986), 498 So.2d 244, 246-248, <u>writ
> denied</u>, 503 So.2d 474 (La. 1987), the court held that
> there was sufficient evidence the defendant had the
> specific intent to kill or to inflict great bodily harm
> to support his second degree murder conviction where the
> defendant shot the victim in the neck from a distance of
> two to three feet away. See also, <u>State v. Buchanan</u>,
> 94-488 (La. App. 3rd Cir. 11/2/94), 649 So.2d 586,
> 589-590, <u>writ denied</u>, 94-2956 (La. 3/24/95), 651 So.2d
> 287, which held there was sufficient evidence that
> defendant possessed specific intent to kill or inflict
> great bodily harm upon the victim to sustain second-
> degree murder conviction, although the defendant alleged
> that he was poking the victim to make him exit a car when
> the gun accidentally discharged.

> Moreover, we find there was sufficient evidence for the
> jury to have convicted the defendant of felony second
> degree murder, which does not require the specific intent

to kill or to commit great bodily harm. Rather, under
the felony murder doctrine, the State must prove the
commission of the underlying felony or the attempt
thereof. State v. Kirkland, [798 So.2d 263, 268 (La.
App. 5th Cir. 2001), writ denied, 827 So.2d 415 (2002)].
According to LSA-R.S. 14:60, aggravated burglary is the
unauthorized entering of any inhabited dwelling, or of
any structure, water craft, or movable where a person is
present, with the intent to commit a felony or any theft
therein, if the offender is armed with a dangerous
weapon; or after entering arms himself with a dangerous
weapon; or commits a battery upon any person while in
such place, or in entering or leaving such place.


In this case, the evidence at trial showed the victim
died after the defendant, who was armed with a gun,
entered the victim's house with the intent to steal the
victim's cocaine. Additionally, the evidence also showed
the defendant committed a battery upon the victim while
in the house. Thus, the evidence showed that the victim
died during an aggravated burglary in which the defendant
participated, which is sufficient to sustain a felony
second degree murder conviction. See, State v. Kirkland,
supra.

> McFarland, 960 So.2d at 1137-38.

Buried within McFarland's habeas petition under the rubric of

his second claim are a number of other specifications of alleged

ineffectiveness which were not presented to the state courts in

either his direct criminal appeal or in post-conviction relief

proceedings. (Rec. doc. 1-1, pp. 15-16). These new factual

allegations have thus not been exhausted in the state court system.

Sosa v. Johnson, 198 F.3d 240, 1999 WL 824456 at *4 (5th Cir.

1999)(citing Joyner v. King, 786 F.2d 1317, 1320 (5th Cir.

1986)("new factual allegations in support of previously asserted

legal theory" must be presented to state court); <u>Rodriquez v.</u> <u>Estelle</u>, 724 F.2d 463, 466 (5th Cir. 1984)(ineffective assistance of counsel claim not exhausted due to new facts); <u>Burns v. Estelle</u>, 695 F.2d 847, 849-50 (5th Cir. 1983)(factual bases of claims not presented in state court)); <u>Brown v. Cain</u>, 1995 WL 442085 at *2-3 (E.D. La. July 21, 1995)(Vance, J.).   Like McFarland's claim of ineffective assistance of appellate counsel, it would now be too late for him to pursue post-conviction relief on these additional specifications and review of them is procedurally barred here. However, even if the Court were free to do so it would nevertheless recommend that habeas relief be denied.

Petitioner claims that trial counsel was ineffective in informing the jury of petitioner's prior conviction for possession of cocaine because counsel knew that said information would not be presented to the jury since petitioner was not going to testify.

A review of the trial transcript reflects the following colloquy in connection with defense counsel's questioning of Shannon Herron, a manager at a Taco Bell, regarding petitioner's work history at the restaurant:

Q.  As an employee, if he [petitioner] were able to go back to work, would you hire him again?

A.  As an employee?

Q.  Yeah.

A.  Yeah.  Luther was a good worker.

Q.  During his employment, did you ever become aware of
the fact that he had a prior conviction for possession of
cocaine?

A.  No.  And Luther – – we really didn't discuss his
outside life, other than work-related.  So you know, once
I hired him, whatever was going on with him, if it didn't
interfere with work, you know.

Q.  So you never saw any trouble with drugs or anything
like that?

A.  No.

> State rec., vol. 6 of 9, p.
> 293.

For the following reasons, the Court finds this specification
of alleged ineffectiveness to be without merit.  First, petitioner
has failed to show that counsel was deficient in that, contrary to
petitioner's suggestion, counsel did not know that information
regarding petitioner's prior drug conviction would not come into
evidence because counsel did not know whether petitioner would take
the stand.  This fact is exemplified by the following pre-trial
announcement which reflects counsel's concern, given petitioner's
prior conviction, over his uncertainty as to whether petitioner
would take the stand:

MR. NOLTING [defense counsel]:

Your Honor, may I ask one thing of the Court. At this juncture, we're getting ready to go into voir dire. And I have been trying to prepare the Defendant, went over with him what his testimony would be, if he so chooses to testify.

And I am at the position with him now in knowing how he has sort [of] complained about my not preparing him, I would like something out of him to let me know whether he is aware of his rights, if he does testify; and that he let me know whether he is going to do that here and now so I can properly examine the people in voir dire. I thought he was going to [testify].

State rec., vol. 5 of 9, p. 122.[25]

Following this exchange, the trial judge advised Petitioner of his rights and urged him to consult with counsel as to whether he should testify. Based upon a review of defense counsel's opening statement, he was apparently of the belief, at that time, that petitioner would take the stand. State rec., vol. 5 of 9, p. 139. As trial progressed, however, counsel became more uncertain as to whether or not petitioner would testify in his own defense as reflected in counsel's proclamation, following Ms. Herron's testimony, in response to the trial court's inquiry as to whether the defense had any more witnesses:

---

[25] A copy of the above colloquy is also attached to petitioner's habeas application (rec. doc. 1) as Exhibit #3. Defense counsel later informed the court that his concern, over whether or not petitioner would testify, was mainly due to the fact "that he [petitioner] has a prior conviction." State rec., vol. 5 of 9, p. 124.

MR. NOLTING:

>    May we approach?

THE COURT:

>    Yes.

(WHEREUPON A BENCH CONFERENCE WAS HELD OUTSIDE THE PRESENCE OF THE JURY.)

MR. NOLTING:

>    I'd like to put on the record that my client at this point, **even though he allowed all that information to come in, and you know, I felt like it might be in his best interest to testify**, but I think there's some - - I think he's so frightened or whatever it is about giving a bad impression and things of that nature, that **he decide[d] he doesn't want to take the stand**....

>    State rec., vol. 6 of 9, p. 298 (emphasis added).

It thus appears that petitioner acquiesced in the presentation of the evidence he complaints of. Additionally, given the strong evidence presented in support of his guilt, [26] the Court finds that petitioner has failed to show that he was prejudiced by virtue of the fact that the jury learned of his prior conviction. Accordingly, petitioner has failed to satisfy either prong of the <u>Strickland</u> test.

---

[26] <u>See</u> discussion <u>supra</u> at pp. 22-23.

Petitioner also complains that counsel was ineffective in failing to challenge the prosecutor's assertions which allegedly led to the trial court's denial of petitioner's attempt to obtain different counsel. A review of the trial transcript reflects that petitioner, prior to the commencement of <u>voir</u> <u>dire</u>, sought to change counsel, as follows:

THE WITNESS [Luther McFarland]:
   I would like to file for effective counsel.

THE COURT:
   And you are telling me this while we are waiting for the jury to be bought [sic] up here?

THE WITNESS:
   Yes.

THE COURT:
   What has been ineffective?

THE WITNESS:
   I haven't received my discovery. The times Mark [Nolting] has been was - - been visiting me, it wasn't no time that he wasn't giving - - I wasn't understanding his strategy or what he was planning to do to represent me in court.

THE COURT:
   And why didn't you bring this up before now?

THE WITNESS:

I was writing letters, hoping that you would get them.  I didn't have but one motion since I been in trial.  And I didn't know - -

THE COURT:

But you have been to court quite a few times, haven't you?

THE WITNESS:

No, sir.  **Well, one time**.  I didn't know when to speak.

> State rec., vol. 5 of 9, pp. 115-116 (emphasis added).

The prosecutor, Mr. Rowan, refuted petitioner's claim that he had only been to court on one prior occasion, stating:

> ... Luther McFarland ... has been in court a number of times.  The last time specifically was when I was sick on May 2nd, and this was set for trial, and then May 4th when it was reset for trial.
>
> And there was never any mention at that particular time roughly a month ago that he wanted to hire Counsel.  That would have been the perfect time to do it, because I was unable to do anything, because I was sick.

> State rec., vol. 5 of 9, pp. 118-119.

Petitioner asserts that defense counsel should have objected to the prosecutor's statement regarding the number of times petitioner had been to court and had an opportunity to seek new counsel.  Further, petitioner argues that defense counsel "should

29

have asked the Court for an in camera inspection, or a continuance to inquire into [the accuracy of] Mr. Rowan['s] assertion...." (Rec. doc. 1-1, p. 16).

Once again, the Court finds that petitioner has failed to satisfy his burden of proof under <u>Strickland</u>. First, he has offered no evidence to support his representation that he was, in fact, in court on only one prior occasion. To the contrary, the minutes reflect that petitioner appeared in court attended by trial counsel on at least four other occasions prior to trial. State rec., vol. 5 of 9, pp. 5, 7, 8, 9. Second, it is far from clear that a successful challenge would have resulted in a different outcome, i.e., that the court would have granted petitioner a continuance for the purpose of retaining new counsel. As reflected below, the untimeliness of petitioner's request for new counsel was only one factor which the trial court considered, finding that petitioner did not have a "good basis" for such a request:

> ... [o]riginally they had five co-defendants. Mr. Nolting was instrumental in getting the case severed, this case severed for trial, because it was in the interest of the Defendant.
>
> Mr. Nolting, I might add, has been present when motions were heard for other co-defendants in the trial and was present yesterday during the trial of the codefendant, Morris McFarland....
>
> Obviously, the reason had to be for that, that he wanted to - - he was scoping out the other trial in an attempt to help him prepare for this one. He had what

amounted to a snapshot of the State's case in this - -
with what the State's case will be like at this trial.

He saw, I believe, all but one of the witnesses that
will testify today yesterday. My point is, Mr.
McFarland, your lawyer is doing his job. He came here
from wherever that he lives a few Parishes away and out
in wherever that is, and for the purpose of making sure
that he was ready for your trial today.

Not all lawyers do those sorts of things. He has,
in my opinion, been prepared and well aware of what was
going on throughout the whole process the last however
many months this case has been pending; and he has - -
every time one of the lawyers for the co-defendants came
up to the bench on the issue, he came with them, invited
or not.

Of course, he was invited, because I would not
attempt to stop one of the lawyers for a codefendant from
hearing something that might end up being relevant to
them. The point that I am making to you, Mr. McFarland,
is your lawyer has been on-the-job, he has been paying
attention to your case, he has obviously been getting
ready, he is obviously extremely familiar with all the
facts. He is now even more familiar, because he has seen
a preview of the State's [case].


MR. NOLTING:

That's correct, your Honor.


THE COURT:

I don't know how much - - I could not - - if I were
asked to criticize him on this, I wouldn't have any
criticism to offer. I mean, what more can he do? He's
obtained all discoverable material from the State, and he
may not have given it to you or you may not have seen it,
but that doesn't mean he didn't get it.

So if this had been brought to my attention at a
more appropriate time, whether it's your fault or not, I
might have considered it, just because you asked, not
because I thought your lawyer wasn't doing a good job for
you, just because you asked; but we now have - - we are
not ready to start the trial.... I'm not going to, at
the last minute, continue the case with the hope of

getting another attorney into the case and the hope that that attorney will get up to speed quickly on it, especially when I consider that there's not a good basis for it.

State rec., vol. 5 of 9, pp. 119-121.

Accordingly, the Court finds that petitioner's ineffectiveness claim is without merit.

**Trial Court Erred in Allowing Prosecution Prior to Competency Determination**

Petitioner asserts that his constitutional rights were violated because he was brought to trial before a determination was made regarding his mental competency to proceed. In support of this claim, petitioner presents a barebones argument, stating that under applicable state law, a defendant's mental capacity to proceed must be determined via contradictory hearing before trial can commence and because no such determination was made before he was brought to trial, he was denied his right to due process and a fair trial. Rec. doc. 1-1, pp. 26-27.

"It is well established that the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial." Medina v. California, 505 U.S. 437, 439 (1992)(citing Drope v. Missouri, 420 U.S. 162 (1975) and Pate v. Robinson, 383 U.S. 375 (1966)). In

accordance with this principle, Louisiana Code of Criminal Procedure Article 642 provides, in pertinent part: "[w]hen the question of the defendant's mental incapacity to proceed is raised, there shall be no further steps in the criminal prosecution, except the institution of prosecution, until the defendant is found to have the mental capacity to proceed."

In the instant matter, however, as the State points out in its supplemental response (rec. doc. 14, p. 13), the issue of mental competency never arose in petitioner's case. Instead, the issue arose in connection with the case brought against one of petitioner's co-defendants, Derrick Williams.

On April 7, 2005, Derrick Williams' trial counsel filed a "Motion to Appoint Sanity Commission to Determine Competency to Stand Trial", alleging that said co-defendant had a past history of psychiatric disorders and treatment.[27] Pursuant to that motion, the trial court appointed Drs. Richard Richoux and Rafael Salcedo to examine Williams and to report to the court regarding his competency to stand trial. As evidenced by the court minutes, a sanity commission hearing was initially set for June 1, 2005 to determine Derrick Williams' competency.[28] No such hearing was set

---

[27]State rec., vol. 2 of 9.

[28]State rec., vol. 2 of 9.

for any of Willams' co-defendants, including petitioner. Further, as evidenced by the court minutes,[29] only Williams appeared at the June 1, 2005 hearing.[30] That hearing was continued to a later date and by that time petitioner had already gone to trial.

Clearly, when a defendant's competency is not at issue, there is no constitutional obligation for the trial court to conduct a competency hearing. Thus, petitioner's complaint that his right to due process was violated because no determination of his competency to proceed was conducted prior to trial is without merit.

## RECOMMENDATION

For the foregoing reasons, it is recommended that the application for federal habeas corpus relief of Luther McFarland be dismissed with prejudice.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed

---

[29]State rec., vol. 2 of 9.

[30]The Clerk's Office for the Twenty-Fourth Judicial District Court for the Parish of Jefferson, however, mistakenly issued subpoenas for all of the defendants, including petitioner, to appear in court on June 1, 2005. A copy of said subpoenas are attached to the State's supplemental response. (Rec. doc. 14-1, pp. 1-5).

factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. §636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996)(<u>en banc</u>).[31]

New Orleans, Louisiana, this __22nd__ day of __February__, 2012.

_Alma L. Chasez_
ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE

---

[31]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.